IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| NORRIS G. HOLDER, JR., <br><br> *Petitioner*, <br><br> v. <br><br> STEVEN KALLIS, Warden, <br> USP Terre Haute, <br> and <br> UNITED STATES OF AMERICA, <br><br> *Respondents*. | Case No. 2:23-cv-524 <br><br> DEATH PENALTY CASE |

**PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

Eliza Meredith
Assistant Federal Public Defender
Office of Federal Public Defender for the
Eastern District of Arkansas
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201
Phone: (501) 324-6114
Fax: (501) 324-5630
Eliza_Meredith@fd.org

Allen Franco
Federal Defender Office
Districts of Massachusetts, New Hampshire,
and Rhode Island
51 Sleeper St., 5th Floor
Boston, MA 02210
Phone: (617) 223-8061
Fax: (617) 639-9023
Allen_Franco@fd.org                      *Counsel for Norris G. Holder, Jr.*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iii

INTRODUCTION .........................................................................................................1

RELEVANT BACKGROUND ...................................................................................... 2

ARGUMENT..................................................................................................................4

    I.   THE DISTRICT COURT LACKED SUBJECT MATTER
        JURISDICTION TO TRY MR. HOLDER ON CAPITAL
        CHARGES AND IMPOSE SENTENCES OF DEATH
        BECAUSE THE GRAND JURY DID NOT INDICT MR.
        HOLDER ON ANY CAPITAL CRIMES. ............................................................ 4

        A.  The Fifth Amendment Right to an Indictment for Capital
             Offenses is Both Nonwaivable and Jurisdictional......................................... 4

        B.  Mr. Holder's Indictment Alleged None of the Aggravating
             Circumstances and Intent Factors Required to Subject Him to
             Capital Prosecution. ....................................................................................6

        C.  Because Mr. Holder was Never Indicted on Capital Offenses,
             the District Court Lacked Jurisdiction to Conduct a Capital
             Trial or to Impose a Death Sentence. ..........................................................8

    II.  MR. HOLDER IS ENTITLED TO RELIEF UNDER 28 U.S.C.
        § 2241. .................................................................................................... 10

        A.  The Absence of Jurisdiction is Among the Most Fundamental
             Safeguards for Which the Writ of Habeas Corpus has Been
             Historically Available. ................................................................................ 10

        B.  *Jones v. Hendrix* Does Not Mandate a Contrary Result. ...........................11

        i.   These are highly unusual circumstances in which the
            sentencing court lacked jurisdiction to adjudicate a capital
            case. ................................................................................................ 13

        ii.  Mr. Holder challenges both the imposition and the execution of
            his death sentences for capital offenses for which he was never
            charged. .......................................................................................... 14

PRAYER FOR RELIEF ..............................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. United States,*
536 U.S. 956 (2002) ................................................................................................ 3

*Alleyne v. United States,*
570 U.S. 99 (2013) ......................................................................................... 6, 7, 9

*Ex Parte Bain,*
121 U.S. 1 (1887)................................................................................... 1, 5, 8, 13

*Boumediene v. Bush,*
553 U.S. 723 (2008)............................................................................................. 10

*Brown v. Davenport,*
142 S. Ct. 1510 (2022) ....................................................................................... 10

*In re Davenport,*
147 F.3d 605 (7th Cir. 1998) ............................................................................ 11

*Ford v. Wainwright,*
477 U.S. 399 (1986) ............................................................................................. 12

*Gonzales v. Thaler,*
565 U.S. 134 (2012)............................................................................................. 10

*Holder v. United States,*
136 S. Ct. 34 (2015)............................................................................................... 4

*Holder v. United States,*
2008 WL 2909648 (E.D. Mo. Jul. 22, 2008) .............................................. 3

*Holder v. United States,*
2009 WL 5030785 (E.D. Mo. Dec. 14, 2009) ............................................ 3

*Holder v. United States,*
539 U.S. 916 (2003).............................................................................................. 2

*Holder v. United States,*
721 F.3d 979 (8th Cir. 2013)................................................................... 2, 4, 13

*Holder v. United States,*
Case No. 22-cv-00323-JRS-MG (S.D. Ind. 2022) .................................... 4

iii

*Jones v. Hendrix,*
 143 S. Ct. 1857 (2023) ............................................................ 11, 12, 13, 14

*Kadamovas v. Director, Federal Bureau of Prisons,*
 Case No. 2:23-cv-22 (S.D. Ind., Jan. 12, 2023) .................................... 14, 15

*Lamar v. United States,*
 240 U.S. 60 (1916) ........................................................................... 9

*Ring v. Arizona,*
 536 U.S. 584 (2002) ...................................................................... 6, 9

*Russell v. United States,*
 369 U.S. 749 (1962) ........................................................................ 6

*Sattazhan v. Pennsylvania,*
 537 U.S. 101 (2003) ........................................................................ 6

*Ex Parte Siebold,*
 100 U.S. 371 (1880) ...................................................................... 10

*Smith v. United States,*
 360 U.S. 1 (1959)...................................................................... 5, 6, 8, 9

*Stirone v. United States,*
 361 U.S. 212 (1960)......................................................................... 5

*United States v. Allen,*
 247 F.3d 741 (8th Cir. 2001)............................................................... 2

*United States v. Allen,*
 357 F.3d 745 (8th Cir. 2004), *rev'd en banc* 406 F.3d 940 (8th Cir.
 2005).................................................................................. 3

*United States v. Bridgewater,*
 995 F.3d 591 (7th Cir. 2021) ............................................................... 6

*United States v. Cotton,*
 535 U.S. 625 (2002).......................................................................8, 9

*United States v. Holder,*
 Case No. 4:97-cr-141-ERW-1, (E.D. Mo. July 23, 1998) ............................... 2

*United States v. Williams,*
 341 U.S. 56 (1951) .......................................................................... 9

*Vasquez v. Hillery,*
 474 U.S. 254 (1986) ........................................................................ 5

iv

*Ex Parte Yeager*,
   75 U.S. (8 Wall.) 85 (1869) ......................................................................... 10

## Statutes

18 U.S.C. § 924 ...................................................................................... 2, 7

18 U.S.C. § 2113 .................................................................................... 2, 7

18 U.S.C. § 3591...................................................................................... 7, 8

18 U.S.C. § 3592...................................................................................... 6, 8

28 U.S.C. § 2241 ............................................................................... *passim*

28 U.S.C. § 2255 .......................................................................... 3, 11, 12, 13

## Rules

Fed. R. Civ. P. 59(e)................................................................................ 3, 4

Fed R. Crim. P. 7.............................................................................. *passim*

## Constitutional Provisions

U.S. Const., amend V............................................................................. *passim*

U.S. Const., amend. VIII ...........................................................................12

U.S. Const., Article I, § 9, cl. 2................................................................ 10

**INTRODUCTION**

Petitioner Norris G. Holder, Jr., through his undersigned counsel, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The founders enshrined in the Fifth Amendment a clear directive: "No person shall be held to answer for a capital . . . crime unless on . . . a[n] indictment of a Grand Jury[.]" U.S. Const., amend. V. A foundational principle of the American legal system is that United States district courts have uniquely limited subject matter jurisdiction over capital cases, extending only to those that comply with the Indictment Clause. Moreover, a federal district court has no jurisdiction to convict or sentence a defendant for a capital crime that has not been charged in an indictment returned by a grand jury. *See Ex parte* Bain, 121 U.S. 1, 10 (1887). Thus, it is firmly rooted in the history and tradition of American jurisprudence that an indictment which fails to charge a capital offense deprives the district court of jurisdiction to "hear evidence or pronounce [a death] sentence." *Id*. at 13–14.

The district court that presided over Mr. Holder's prosecution lacked subject matter jurisdiction over the case because Mr. Holder's indictment failed to properly charge him with a capital offense. In particular, the indictment against Mr. Holder did not include any aggravating circumstances or intent factors, both of which form essential elements of a federal capital charge. As a result, Mr. Holder currently sits on federal death row having been tried, convicted, and sentenced for capital offenses for which he was never charged and by a court that lacked subject matter jurisdiction to preside over a capital offense.

28 U.S.C. § 2241 is the appropriate mechanism to challenge the jurisdiction of the district court to convict and sentence Mr. Holder in a capital case where the indictment

did not present a capital charge. This Court therefore should grant Mr. Holder the writ and vacate his capital convictions and death sentences.

**RELEVANT BACKGROUND**

In 1997, a federal grand jury in the Eastern District of Missouri returned an indictment charging petitioner Norris G. Holder, Jr., and Billie Jerome Allen with one count of bank robbery resulting in death in violation of 18 U.S.C. § 2113(a) and (e), and one count of carrying a firearm during a crime of violence resulting in death, in violation of 18 U.S.C. §§ 924(c) and (j). Mr. Holder was convicted and sentenced to death on both counts. *United States v. Holder*, Case No. 4:97-cr-141-ERW-1, ECF No. 458 (E.D. Mo. July 23, 1998).

On direct appeal, a divided panel of the Eighth Circuit issued a single decision affirming Mr. Holder's and Mr. Allen's convictions and death sentences. *United States v. Allen,* 247 F.3d 741 (8th Cir. 2001). Judge Richard S. Arnold dissented and would have vacated Mr. Holder's death sentences on the ground that the jury should have been required to find he had a specific intent to aid and abet the killing of security guard Richard Heflin, which the evidence did not prove. *Allen*, 247 F.3d at 979–98 (Arnold, J., dissenting).[1] The United States Supreme Court denied certiorari on June 9, 2003. *Holder v. United States*, 539 U.S. 916 (2003).

---

[1] The Eighth Circuit majority described the "overwhelming" evidence that it was Mr. Allen who killed security guard Richard Heflin. *Allen*, 247 F.3d at 777. *See also Holder v. United States*, 721 F.3d 979 (8th Cir. 2013) ("Evidence presented at trial showed that Allen was the first man to enter the Bank and that he began shooting his rifle immediately, killing security guard Richard Heflin.").

Mr. Allen also petitioned the Supreme Court for certiorari. An issue Mr. Allen raised challenging the failure to charge aggravating factors in the indictment resulted in a remand by the Supreme Court and a subsequent grant of relief from the Eighth Circuit. *Allen v. United States*, 536 U.S. 956 (2002); *United States v. Allen*, 357 F.3d 745 (8th Cir. 2004), *rev'd en banc* 406 F.3d 940 (8th Cir. 2005). On rehearing en banc, the Eighth Circuit agreed that the indictment in this case was constitutionally defective and violated the Fifth Amendment. *See United States v. Allen*, 406 F.3d at 943. The Eighth Circuit concluded, however, that "the failure to [include aggravating factors] in this pre-*Ring* case was harmless beyond a reasonable doubt." *Id.* at 949. The Eighth Circuit reached this harmless-error determination by speculating that the grand jury would have indicted Mr. Allen on statutory aggravating factors if it had been asked to do so. *Id.* at 947–49.

Mr. Holder subsequently moved pursuant to 28 U.S.C. § 2255 for the district court to vacate his conviction and sentence. Mr. Holder raised three grounds for relief, including a claim that the indictment failed to allege a single statutory aggravating factor in violation of the Indictment Clause of the Fifth Amendment. The district court denied Mr. Holder's § 2255 motion on all claims. *Holder v. United States,* 2008 WL 2909648 (E.D. Mo. Jul. 22, 2008). Mr. Holder moved pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the district court's judgment, and the district court denied that motion as well. *Holder v. United States,* 2009 WL 5030785 (E.D. Mo. Dec. 14, 2009).

In July 2013, Mr. Holder appealed the district court's denial of his § 2255 motion and the Rule 59(e) motion to the Eighth Circuit. The panel relied on the en banc decision in Mr. Allen's case, holding "that it is error not to charge the aggravating factors

for capital punishment in the indictment, but that the error is not structural and is thus subject to harmless-error analysis." *Holder v. United States*, 721 F.3d 979, 999 (8th Cir. 2014) (citing *Allen*, 406 F.3d at 943). Ignoring the significant difference between the evidence of Mr. Holder's role in the crime and that of Mr. Allen's role, the Eighth Circuit explained:

> For at least the reason that the same grand jury that returned Allen's indictment also returned Holder's indictment based on the same evidence and for the same charges, "we see no realistic possibility that [Holder's] grand jury would have declined to charge a statutory aggravating factor or the mens rea requirement in order to avoid exposing [Holder] to the death penalty."

*Id*. (quoting *Allen*, 406 F.3d at 949). The Eighth Circuit affirmed the district court's denial of Mr. Holder's Rule 59(e) motion in all respects. On October 5, 2015, the Supreme Court denied certiorari. *Holder v. United States*, 136 S. Ct. 34 (2015).

Mr. Holder is currently litigating an unrelated § 2241 petition in this Court. *Holder v. United States*, Case No. 22-cv-00323-JRS-MG (S.D. Ind. 2022). That petition remains pending as of the date of this submission.

## ARGUMENT

**I.    THE DISTRICT COURT LACKED SUBJECT MATTER JURISDICTION TO TRY MR. HOLDER ON CAPITAL CHARGES AND IMPOSE SENTENCES OF DEATH BECAUSE THE GRAND JURY DID NOT INDICT MR. HOLDER ON ANY CAPITAL CRIMES.**

### A.    The Fifth Amendment Right to an Indictment for Capital Offenses is Both Nonwaivable and Jurisdictional.

The Fifth Amendment provides, in pertinent part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" U.S. Const., amend. V. An indictment "must be a plain, concise, and a definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

4

The Fifth Amendment was enacted "in recognition of the fact that the intervention of a grand jury was a substantial safeguard against oppressive and arbitrary proceedings." *Smith v. United States*, 360 U.S. 1, 9 (1959). Only the grand jury can decide whether "to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense." *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986). A conviction on a charge the grand jury never made against a defendant is "fatal error." *Stirone v. United States*, 361 U.S. 212, 219 (1960); *see also Ex Parte Bain*, 121 U.S. 1, 10 (1887) ("If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance" of the grand jury right would be "almost destroyed."). Thus, the plain text of the Fifth Amendment demonstrates that the grand jury requirement is of paramount concern in capital cases. Only capital crimes are specifically identified in the Indictment Clause, signaling the Framers' intention to guarantee the grand jury right without exception in cases potentially carrying the ultimate punishment.

Congress has reinforced that constitutional protection with Federal Rule of Criminal Procedure 7, which makes the indictment requirement for a capital offense non-waivable. *See* Fed R. Crim. P. 7(a)(1)(A) ("An offense . . . must be prosecuted by an indictment if it is punishable [] by death."). This rule contrasts with that applicable to non-capital offenses, for which the defendant may agree to waive his indictment right and proceed by information alone. *See* Fed. R. Crim. P. 7(b).

Because both the Constitution and Rule 7 allow a federal capital prosecution only upon a valid grand jury indictment, the requirement is jurisdictional. *See Smith*, 360

5

U.S. at 10. Indeed, the Supreme Court has plainly held that a trial court lacks jurisdiction to hear a potentially death-eligible case notwithstanding the defendant's purported waiver of indictment. *See id.* at 9 (holding that under Rule 7, a grand jury indictment may be waived "only in those proceedings which are noncapital"). *Smith* demonstrates that "Congress knows how to create certain non-waivable rights for the accused when it wishes." *United States v. Bridgewater*, 995 F.3d 591, 597 (7th Cir. 2021). An indictment in a capital case is one such nonwaivable right.

### B. Mr. Holder's Indictment Alleged None of the Aggravating Circumstances and Intent Factors Required to Subject Him to Capital Prosecution.

To satisfy the Fifth Amendment's Indictment Clause, the grand jury must find and include all essential elements of the charged offense. *See Russell v. United States*, 369 U.S. 749 (1962). In *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that sentencing factors that raise the level of punishment of a charged offense must be considered as elements of a greater—and new—offense. 570 U.S. at 114–15. The Court recognized that "[i]f a fact was by law essential to penalty, it was an element of that offense." *Alleyne*, 570 U.S. at 109. "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Id.* at 114–15.

Under the federal death penalty scheme, the finding of a statutory aggravating factor is required to make a defendant eligible for a death sentence. 18 U.S.C. 3592(c). Accordingly, it is an essential element of a new, capital charge, and not merely a sentencing factor relating to the non-capital offense. *Id.* at 115–16; *see also Sattazhan v. Pennsylvania*, 537 U.S. 101, 112 (2003) (murder plus one or more aggravating circumstances is a separate offense from murder *simpliciter*); *Ring v. Arizona*, 536 U.S.

6

584, 609 (2002) (aggravating circumstances function as elements of a greater, capital offense).

Similarly, a federal capital crime requires the jury to find at least one statutory intent factor. 18 U.S.C. § 3591(a)(2). The intent factors also function as essential elements of the separate capital offense, a distinct charge from the non-capital crime that omits this element.

Because the Constitution requires that a federal capital crime be charged by a valid indictment, and because Rule 7 prohibits waiver of this requirement, the failure to include both a statutory aggravator and a statutory intent factor in an indictment deprives the district court of jurisdiction to preside over a capital proceeding. In effect, the Federal Death Penalty Act constrains the power of a district court to preside over a capital proceeding unless a grand jury has indicted the defendant on both aggravating circumstances and intent factors. Put another way, if included in the indictment, the aggravating circumstances and intent factors form a new, capital offense. In their absence, the case cannot be capitally prosecuted. *See Alleyne*, 570 U.S. at 114–15 ("When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a *new offense* and must be submitted to the [grand] jury." (emphasis added)).

Mr. Holder's grand jury charged him with two offenses: one count of bank robbery resulting in death in violation of 18 U.S.C. §§ 2113(a) and (e), and one count of carrying or using a firearm during a crime of violence resulting in death, in violation of 18 U.S.C. §§ 924(c)(1) and (j)(1). Both 18 U.S.C. § 2113(e) and 18 U.S.C. § 924(j) provide that if a death results in the underlying offense, the defendant may be sentenced to a term of years, to life imprisonment, or to death.

7

Mr. Holder's indictment did not allege any statutory aggravating factors, nor did it allege any statutory intent factors as required by 18 U.S.C. §§ 3591(a)(2) and § 3592(c). Thus, the indictment returned by the grand jury did not charge Mr. Holder with any capital offense recognized under federal law. The crimes for which Mr. Holder was indicted carried the statutory penalty of any term of years up to life imprisonment. As a result, Mr. Holder currently faces execution despite having been prosecuted by a court that lacked jurisdiction over a capital proceeding, and despite not having been convicted of any valid federal capital crime. *See Smith,* 360 U.S. at 14 (Clark, J., concurring in part) (where the government did not comply with the indictment requirements for a capital offense, the only potential penalty was a sentence of life or a term of years).

### C. Because Mr. Holder was Never Indicted on Capital Offenses, the District Court Lacked Jurisdiction to Conduct a Capital Trial or to Impose a Death Sentence.

A federal court has no jurisdiction, and thus no power, to enter a judgment of conviction or impose a sentence for a crime that was not charged in an indictment. *Bain*, 121 U.S. at 13. As established above, Mr. Holder's indictment lacked the essential elements required to charge him with a capital crime. As a result, "[t]here was nothing before the court on which it could hear evidence or pronounce [a death] sentence." *Id.* at 13–14. The district court was simply without jurisdiction to preside over any capital proceeding against Mr. Holder. *See Smith*, 360 U.S. 1 (1959) (holding that the trial court lacked the power to hear a potentially death-eligible case prosecuted by information despite the defendant's purported waiver of indictment).

Mr. Holder recognizes that, in *United States v. Cotton*, 535 U.S. 625 (2002), the Supreme Court partially overruled the jurisdictional holding in *Bain* as it applied to

defective indictments charging non-capital crimes. 553 U.S. at 631. In *Cotton*, a non-capital case, the Supreme Court relied upon *Lamar v. United States*, 240 U.S. 60 (1916) and *United States v. Williams*, 341 U.S. 56, 66 (1951), in finding that defects in the indictment do not deprive a court of jurisdiction over a non-capital proceeding. *Id.* at 630. Both *Lamar* and *Williams* also were non-capital cases, and both predated the Supreme Court's decision in *Smith* and the Federal Death Penalty Act. *See Lamar*, 240 U.S. at 64; *Williams*, 341 U.S. at 59.

Smith remains the governing law for capital cases; nothing in *Cotton* undermines *Smith's* holding that a nonwaivable defect in an indictment is jurisdictional and can be raised at any time. This is particularly true given that both Congress (through Rule 7) and the framers (through the Indictment Clause of the Fifth Amendment) plainly intended that a proper indictment be the only mechanism through which a person can be held to answer for a capital offense. Further, when Congress adopted the Federal Death Penalty Act in 1994, it left intact Rule 7's mandate that the indictment requirement be nonwaivable in a capital case. And in the wake of *Ring* and *Alleyne,* Congress has left both the Federal Death Penalty Act and Rule 7 intact.

Accordingly, because Mr. Holder's grand jury did not charge him with either a statutory aggravating factor or a statutory intent factor, he was not indicted for any offense. The indictment that initiated Mr. Holder's prosecution therefore "did not confer power on the convicting court to hear the [capital] case." *See Smith*, 360 U.S. at 10. And because the district court lacked jurisdiction to preside over any capital proceeding against Mr. Holder, his convictions and death sentences must be vacated.

9

**II.    MR. HOLDER IS ENTITLED TO RELIEF UNDER 28 U.S.C. § 2241.**

    **A.    The Absence of Jurisdiction is Among the Most Fundamental Safeguards for Which the Writ of Habeas Corpus has Been Historically Available.**

A petition for writ of habeas corpus under 28 U.S.C. § 2241 is the appropriate mechanism for Mr. Holder to challenge the jurisdiction of the convicting court. The history and traditions of American jurisprudence make clear that the absence of jurisdiction is among the most fundamental defects that the writ of habeas corpus is designed to remedy. Indeed, habeas has long been available to prisoners seeking to challenge the jurisdiction of the court in which they were tried and sentenced. *See Brown v. Davenport*, 142 S. Ct. 1510, 1522 (2022) ("A habeas court could grant relief if the court of conviction lacked jurisdiction over the defendant or his offense."); *see also Ex Parte Siebold*, 100 U.S. 371 (1880) (habeas relief is available to challenge whether the convicting court had jurisdiction over the person or the cause). Moreover, the Supreme Court has plainly held that "[s]ubject-matter jurisdiction can never be waived or forfeited" and that "objections [to jurisdiction] may be resurrected at any point in the litigation[.]" *Gonzales v. Thaler*, 565 U.S. 134, 141 (2012).

Further, the Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2. To bar Mr. Holder from pursuing relief under § 2241 for the district court's lack of subject matter jurisdiction would conflict with the traditional understanding of the Great Writ and implicate the Suspension Clause. *See. e.g.*, *Boumediene v. Bush,* 553 U.S. 723, 798 (2008); *Ex Parte Yeager,* 75 U.S. (8 Wall.) 85, 95 (1869).

### B. *Jones v. Hendrix* Does Not Mandate a Contrary Result.

The Supreme Court's recent decision in *Jones v. Hendrix*, 143 S. Ct. 1857 (2023) does not prevent Mr. Holder from seeking relief under § 2241. In 1948, Congress passed 28 U.S.C. § 2255, creating a motions-based mechanism for federal prisoners to seek post-conviction relief. Act of June 25, 1948, Pub. L. No. 80-773, § 2255, 62 Stat. 869, 967. Section 2255 was designed to relieve the burden of handling habeas corpus petitions that was then borne by the relatively small number of district courts in jurisdictions where federal prisons were located.

In contrast to the traditional habeas corpus provision of § 2241, which requires federal prisoners to file in the district where they are physically located, § 2255 situated the venue for post-conviction proceedings in the district of conviction. *See* 28 U.S.C. § 2255(a) (requiring federal prisoners to file motion in "the court which imposed the sentence"). The statute included a provision, known as the savings clause, stating:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e).

In *Jones*, the Supreme Court held that the savings clause did not apply to a federal prisoner who sought to raise a statutory interpretation claim that was not available at the time of his initial § 2255 litigation. 143 S. Ct. at 1864. *Jones* held that the savings clause did not permit a prisoner to pursue relief under § 2241 in such circumstances. *Id.* at 1868, *abrogating In re Davenport*, 147 F.3d 605 (7th Cir. 1998).

11

*Jones* does not, however, eliminate the savings clause altogether, nor does it alter the traditional understanding of habeas corpus. *Id.* at 1863-70.

Rather, *Jones* states that petitioners may continue to avail themselves of the savings clause and file habeas petitions under § 2241 "in cases where unusual circumstances make it impossible or impracticable to seek relief in the sentencing court, as well as for challenges to detention other than collateral attacks on a sentence." *Id.* at 1868. Claims cognizable under § 2241 include those alleging that the petitioner "is being detained in a place or manner not authorized by the sentence, that he has unlawfully been denied parole or good-time credits, or that an administrative sanction affecting the conditions of his detention is illegal." *Id.*

Mr. Holder advances such a claim here. He argues that he is imprisoned on federal death row and facing execution under a death sentence that was imposed by a court that lacked jurisdiction to conduct a capital trial. Were Mr. Holder to attempt to proceed under § 2255 (even assuming he could do so, which he cannot because of 28 U.S.C. § 2255(h)), he would be returning to the very court that lacked jurisdiction over his case from its outset. These are the circumstances that *Jones* acknowledged may satisfy the savings clause and allow a prisoner to proceed under § 2241.

*Jones,* a non-capital case, also did not alter the Eighth Amendment requirement of heightened procedural safeguards for petitioners like Mr. Holder who have been sentenced to death.  Capital cases require the application of a "heightened standard of reliability." *Ford v. Wainwright*, 477 U.S. 399, 411 (1986). These added protections arise from "[t]he knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." *Id.*

12

### i. These are highly unusual circumstances in which the sentencing court lacked jurisdiction to adjudicate a capital case.

As stated above, *Jones* recognizes that federal prisoners may still seek relief under § 2241 when "unusual circumstances make it impossible or impracticable to seek relief in the sentencing court." 143 S. Ct. at 1866; *see also* 28 U.S.C. § 2255(e). Here, recourse to the sentencing court is precluded because it lacked jurisdiction to try Mr. Holder on a capital offense in the first instance. Seeking relief from a court that lacked jurisdiction to preside over the case is a perplexing and highly unusual circumstance.

The inadequacy of § 2255 to correct the jurisdictional defect in Mr. Holder's case is highlighted by the Eighth Circuit's prior decision regarding the indictment. Instead of following the law and recognizing that indictment defects are both non-waivable and structural in a capital case, the Eighth Circuit constructively amended Mr. Holder's indictment to include capital offenses, by speculating about what a hypothetical grand jury might have done if it had been asked to consider the necessary elements of a capital offense. *See Holder*, 721 F.3d at 999 ("[W]e see no realistic possibility that [Holder's] grand jury would have declined to charge a statutory factor or mens rea requirement in order to avoid exposing [Holder] to the death penalty."). The constructive amendment of an indictment by judges eviscerates the non-waivable protections afforded by grand jury proceedings in a potentially capital case, which, as discussed above, were of paramount concern both to the Framers and to Congress. *C.f. Bain*, 121 U.S. at 10 ("If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance . . . [of] an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and

without which the constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed.").

The Eighth Circuit's constructive amendment of Mr. Holder's indictment is all the more egregious because the court based its decision on its earlier holding in co-defendant Billie Allen's case. Unlike Mr. Allen, Mr. Holder was not the person who killed the victim.  It is entirely likely that a properly tasked grand jury might not have indicted Mr. Holder on a statutory aggravator or a statutory intent factor, regardless of whether it might have done so for Mr. Allen. Under the unique and untenable circumstances of this case, Mr. Holder may proceed under § 2241.

### ii. Mr. Holder challenges both the imposition and the execution of his death sentences for capital offenses for which he was never charged.

*Jones* also recognizes that petitioners may continue to avail themselves of the savings clause "for challenges to detention other than collateral attacks on a sentence." 143 S. Ct. at 1868. Such claims include those arguing that a petitioner "is being detained in a place or manner not authorized by the sentence, that he has unlawfully been denied parole or good-time credits, or that an administrative sanction affecting the conditions of his detention is illegal." *Id.*

Mr. Holder challenges both the imposition and the execution of his death sentences based on the district court's lack of jurisdiction. Mr. Holder has been unlawfully imprisoned under a sentence of death. He is held in the Special Confinement Unit at the United States Penitentiary in Terre Haute, which is comprised exclusively of male prisoners sentenced to death. *See generally Kadamovas v. Director, Federal Bureau of Prisons*, Case No. 2:23-cv-22 (S.D. Ind., Jan. 12, 2023). Mr. Holder and other prisoners in the Special Confinement Unit are held in "severely isolating and solitary

14

conditions" and are "restricted to their single cells except for a few hours each week." *Id.* Mr. Holder is not eligible to progress to any other type of facility within the Federal Bureau of Prisons no matter how exemplary his conduct may be. Most significantly, he faces execution, a very real possibility given that 13 federal prisoners were executed between July 2020 and January 2021. The conditions of Mr. Holder's detention, including the place and manner, are the consequence of his unlawful death sentences that were rendered by a district court that lacked jurisdiction to preside over any capital proceeding from the outset of the case.

Accordingly, § 2241 is the appropriate mechanism to challenge Mr. Holder's illegal convictions and death sentences, imposed by a district court that, as a result of the defect in the indictment, lacked jurisdiction to conduct capital proceedings.

**PRAYER FOR RELIEF**

For the reasons set forth above, this Court should grant Mr. Holder the writ of habeas corpus and vacate his convictions and death sentences.

15

Dated November 14, 2023.

Respectfully Submitted,

/s/Eliza Meredith
Eliza Meredith
Assistant Federal Public Defender
Office of the Federal Public Defender for
the Eastern District of Arkansas
1401 West Capitol, Suite 490
Little Rock, AR 72201
Phone: (501) 324-6114
Fax: (501) 324-5630
eliza_meredith@fd.org

/s/Allen Franco
Allen Franco
Assistant Federal Public Defender
Federal Defender's Office for the
Districts of Massachusetts, New Hampshire,
and Rhode Island
51 Sleeper Street, 5th Floor
Boston, MA 02210
Phone: (617) 223-8061
Fax: (617) 639-9023
allen_franco@fd.org

*Counsel for Norris G. Holder, Jr.*